IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:17-CR-00267 |
| | : | |
| v. | : | |
| | : | |
| **DARRYL NELSON** | : | Judge Sylvia H. Rambo |

### MEMORANDUM

Before the court is Defendant Darryl Nelson's motion for relief pursuant to 28 U.S.C. § 2255. (Docs. 46-47.) For the reasons set forth below, the motion will be denied.

### I.   BACKGROUND

On September 9, 2016, following a series of controlled purchases of marijuana from a house located on Berryhill Street in Harrisburg, Pennsylvania, State Police executed a search warrant on the house. (Doc. 58-1, pp. 8, 13.) They located 38 bags of packaged marijuana; individually-wrapped THC candies; 48 amphetamine tablets; six firearms, including an assault rifle; body armor; and over $10,000 in cash. (*Id.*, pp. 13-14.)

In August 2017, Mr. Nelson was indicted on two counts of distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute amphetamines, marijuana, and tetrahydrocannabinol in violation of 21 U.S.C. § 841(a)(1); one count of felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1); and one count of

1

possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. §924(c). (Doc. 1.)

In February 2018, pursuant to a written plea agreement, Mr. Nelson pled guilty to one count of possession of firearms in furtherance of drug trafficking. (Doc. 35.) The court went on to sentence Mr. Nelson to a term of imprisonment of 60 months. (Doc. 45.) Mr. Nelson's attorney was Ari Weitzman of the Federal Public Defender's Office.[1] (Doc. 18.)

On October 28, 2019, Mr. Nelson filed a motion to vacate his conviction and sentence under 28 U.S.C. §2255. (Doc. 46.) The government responded in opposition. (Doc. 58.) The matter is thus ripe for review.[2]

## II.   STANDARD OF REVIEW

Under the Sixth Amendment, a criminal defendant is entitled to counsel that will provide all services necessary "to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel." *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In evaluating an

---

[1] A different public offender was initially appointed to represent Mr. Nelson. (Doc. 11.) Mr. Weitzman was substituted in as counsel on September 28, 2017. (Doc. 18.)

[2] On June 19, 2020, the court granted Mr. Nelson's motion for an extension of time to file his reply brief and ordered him to submit it by July 17, 2020. (Doc. 61.) Mr. Nelson nevertheless failed to submit a reply or a motion for further extension.

ineffective assistance of counsel claim brought under 28 U.S.C. § 2255, the court must examine two factors:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction or. . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*United States v. McKines-El*, No. 3:99-CR-035, 2005 WL 1215953, at *3 (M.D. Pa. Apr. 26, 2005) (quoting *Strickland*, 466 U.S. at 687).

In *Strickland*, the United States Supreme Court explained the proper method for analyzing each factor. First, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. It is easy through hindsight to unfairly scrutinize counsel's strategic and tactical decisions "after conviction or [an] adverse sentence"; to avoid this, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. For example, counsel does not have a duty to investigate every potential fact relevant to the case; instead, they must be free to place reasonable limits on the scopes of their investigations. *Id.* at 690-91. Second, regarding prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

3

been different." *Id.* at 694. A "reasonable probability is" less than a preponderance of the evidence; it is "a probability sufficient to undermine confidence in the outcome." *Id.*

### III. DISCUSSION

Mr. Nelson's motion argues that he received ineffective counsel for two main reasons. First, Mr. Nelson contends that his counsel should have taken various measures to challenge the search warrant of his home, which he alleges was signed by the judge only after the actual search took place. According to Mr. Nelson, discrepancies contained in the dates on the warrant mean that his attorney should have investigated the legality of the search, moved to suppress the search, and advised him to contest the charges at trial rather than plead guilty. Second, Mr. Nelson argues that he received ineffective assistance because his attorney had a conflict of interest that destroyed the attorney-client relationship. As a result of the purported ineffective assistance, Mr. Nelson requests that the court vacate his conviction and sentence.

Mr. Nelson's first claim turns on his assertion that the search warrant for his home was signed by the judge only after the actual search took place. The search occurred on September 9, 2016 at 6:05 am. (Doc. 58-1, p. 3.) The search warrant contains various signatures and dates. The top of warrant provides that the "date of application" is September 8, 2016. (*Id.*, p. 7.) Below that is a signature by Magisterial

District Judge Barbara W. Pianka, together with a statement that the warrant was "Sworn to and subscribed before me this 9 day of Sept 2016." (*Id.*) Below that is another signature by Judge Pianka, with a statement that the warrant was "Issued under my hand this 9 day of September 2016 at 2:00 PM, o'clock." (*Id.*) The following page contains an affidavit of probable cause and is signed at the bottom by Trooper Adrian Bordner affiant, and by Judge Pianka as issuing authority, underneath the statement "I the affiant, being duly sworn according to law, depose and say that the facts set forth in the affidavit are true and correct to the best of my knowledge, information and belief." Both signatures are separately dated September 8, 2016. (*Id.*, p. 8.)

While Judge Pianka's first two signatures do raise questions as to whether the warrant was approved at the time of the search, those queries are laid to rest upon examining the record as a whole. Beginning with the warrant itself, its dates are contradictory and cannot be squared. Judge Pianka's first signature represents that Trooper Bordner swore before her on September 9 that there was probable cause to believe that evidence of a crime was located at the Berryhill Street house, but her third signature represents that Trooper Bordner swore before her as to the underlying facts supporting probable cause on September 8. (*Id.*, pp. 7-8.) These conflicting dates would be very difficult to square absent a scrivener's error.

5

Several pieces of additional evidence also suggest that the warrant contains a scrivener's error, and that as between the conflicting dates, the warrant was actually signed and approved on September 8. First, Trooper Bordner completed a detailed incident report regarding the search that indicates that the warrant was approved prior to its execution. (*See id*., p. 3 ("On 09/09/16 at 0605 hours the Pennsylvania State Police SERT Unit executed a search warrant on the residence… at my request. The aforementioned search warrant was applied for and approved by the issuing authority Judge Barbara PIANKA based off of probable cause established by two previous controlled purchases of Marijuana made from inside said residence utilizing a Confidential Informant.").)

Similarly, Trooper Bordner completed a sworn police criminal complaint charging Mr. Nelson in state court that affirms in even starker terms that the warrant was signed at the time of the search. (*See id*., p. 20 ("On 09/09/16 at approximately 0605 hours members of the Pennsylvania State Police executed a search warrant which was approved and signed by Magistrate District Judge Barbara PIANKA on the residence[.]").)

Further, Trooper Bordner was required to return an inventory of seized property to Judge Pianka. (*See id*., p. 9.) That inventory set forth date and time of the search (*id*., p. 14), and as the government correctly points out, it is unlikely that

Judge Pianka would have accepted the inventory had it stated that the search occurred prior to warrant's approval.

Finally, a special agent from the Federal Bureau of Investigation (FBI) recently interviewed Trooper Bordner regarding Mr. Nelson's allegations. The interview was memorialized in a form FD-302, which reflects that the Trooper Bordner told the agent that he "was confident that the tactical team executed the warrant on the day after he got the warrant signed." (*Id*., p. 22; *see also id.* ("The search warrant was based on a drug investigation and was executed by the Pennsylvania State police tactical team the morning after Trooper Bordner had it signed by a District Judge.").)

Faced with the aforementioned evidence that the September 9 dates on the warrant were scrivener's errors—with the exception of Trooper Bordner's statements to the FBI that occurred after the representation—Mr. Nelson's counsel's performance was not deficient. A reasonable and competent attorney certainly could have concluded during the representation that in light of the foregoing, there was little or nothing to gain from further investigation or filing a motion to suppress. "[A] lawyer's performance does not fall to the level of a Sixth Amendment violation under *Strickland* simply because the lawyer fails to pursue any and all nonfrivolous strategies," *Johnston v. Mitchell*, 871 F.3d 52, 63 (1st Cir. 2017), and the judge's scrivener's error in this case would have been insufficient to trigger the exclusionary

rule in any event. *See Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (applying good faith exception to the exclusionary rule in the face of a judicial clerical error and noting that "[s]uppressing evidence because the judge failed to make all the necessary clerical corrections…will not serve the deterrent function that the exclusionary rule was designed to achieve"); *see also Arizona v. Evans,* 514 U.S. 1, 2 (1995); *United States v. Leon*, 468 U.S. 897, 916, (1984).

The same is true with respect to Mr. Nelson's claim that Mr. Weitzman should have advised him to fight the charges at trial rather than plead guilty. As the government correctly points out, Mr. Nelson faced a guideline range of around 41-51 months' imprisonment in addition to the 60-month term that he eventually received from pleading guilty. Mr. Nelson therefore had much to lose by going trial, and given the weakness in his claim that the search was improper, a reasonable attorney certainly could have concluded that the most advisable strategy for Mr. Nelson was to enter into a plea agreement with the government. Mr. Nelson therefore has not shown that his counsel's performance was deficient in any respect.

For similar reasons, Mr. Nelson also cannot meet the second *Strickland* prong because there is not a reasonable probability that the result would have been any different but for Mr. Weitzman's decisions and actions. As Trooper Bordner's statements to the FBI show, further investigation of the date of the warrant would have revealed that it was signed on September 8, 2016. (*See* Doc. 58-1, p. 22.) Filing

a motion to suppress the fruits of the search due to the scrivener's error, or otherwise contesting the search at trial, would have been unlikely to succeed for the reasons discussed above.

Mr. Nelson's second claim in support of his motion is that his conviction and sentence should be vacated because Mr. Weitzman had an actual conflict of interest and that his guilty plea was therefore not voluntary, intelligent, or knowing. (*See* Doc. 47, p. 25.) Mr. Weitzman initially represented Mr. Nelson against state charges arising from the same search when he worked for the Dauphin County Public Defender's Office. Around the time that Mr. Nelson was indicted in federal court, Mr. Weitzman began working for the Federal Public Defender's Office, and given his familiarity with the case, he was substituted in as counsel. According to Mr. Nelson, these circumstances made him "concerned [about] what relationship Mr. Weitzman had with the Government, his new employer," and question whether Mr. Weitzman was "involved in a quid pro quo situation." (Doc. 47, pp. 26, 27.) Mr. Nelson claims that he therefore asked Mr. Weitzman to "recuse himself" but that his request "fell upon deaf ears." (*Id.*, p. 27.) The theory behind this claim, as the government articulates, appears to be that Mr. Weitzman provided Mr. Nelson with poor representation in exchange for obtaining employment with the U.S. government.

Mr. Nelson's arguments in this respect are meritless, as there is nothing in the record to indicate that Mr. Weitzman was conflicted or somehow improperly influenced in any way. His claims also defy logic. The notion that Mr. Nelson's counsel provided him with poor representation in order to join the government's payroll ignores that Mr. Weitzman was actually hired by the Federal Public Defender's Office, a separate entity from the U.S. Attorney's Office to which it is necessarily adverse. It simply makes no sense that the Federal Public Defender's Office would have brought Mr. Weitzman on board with the understanding that he would undermine the defense of one his first clients. Finally, in case there is any doubt, the record demonstrates that Mr. Weitzman provided Mr. Nelson with diligent, loyal, and effective representation, including by filing and successfully arguing a motion to review detention that secured Mr. Nelson's pre-trial release over the government's objection and this court's express reluctance. (*See* Doc. 28.) Mr. Nelson therefore has not shown any basis for relief under § 2255.

## IV. CONCLUSION

For the reasons outlined above, Defendant Darryl Nelson's motion for relief pursuant to 28 U.S.C. § 2255 will be denied. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: September 11, 2020